NOT RECOMMENDED FOR FULL-TEXT PUBLICATION
File Name: 12a0974n.06

No. 11-3431

UNITED STATES COURT OF APPEALS
FOR THE SIXTH CIRCUIT

**FILED**

*Sep 04, 2012*

DEBORAH S. HUNT, Clerk

|  |  |  |
|---|---|---|
| DIANA WILLIAMS, | ) ) ) | ON APPEAL FROM THE UNITED STATES DISTRICT |
| Plaintiff-Appellant, | ) ) | C O U R T   F O R   T H E |
| v. | ) ) | SOUTHERN DISTRICT OF OHIO |
| CITIMORTGAGE, INC., | ) ) ) | |
| Defendant-Appellee. | ) ) | |

Before: SILER and WHITE, Circuit Judges; REEVES,* District Judge.

**PER CURIAM.** Diana Williams appeals the dismissal for failure to state a claim of her putative class-action complaint, which alleged that CitiMortgage's pattern and practice is to issue form mortgage-loan-payoff statements that impose unjustified and improper additional interest and a $50 fax/statement fee as a prerequisite to releasing its mortgages, sums to which it is not entitled. Williams alleged that as a result, CitiMortgage caused her to pay approximately $600 more than the amount due under her mortgage and that, although CitiMortgage refunded her the excess payment approximately one month later, it did so without paying her interest on the $600. We AFFIRM.

---

*The Honorable Danny C. Reeves, United States District Judge for the Eastern District of Kentucky, sitting by designation.

1

## I

The undisputed facts are set forth in the district court's opinion:

>      The Court derives the following facts from Plaintiff's Complaint and the exhibits attached thereto.

>      Plaintiff in this action is Diana Williams.  She is a resident of Ohio.  Defendant in this action is Citi.  Citi is a New York corporation with its principal place of business in Missouri.  Citi specializes in the origination, purchase, receipt of assignments in, and servicing of residential home mortgages.

>      In July 2006, Plaintiff had a mortgage on her house located in Gahanna, Ohio.  Defendant held and serviced Plaintiff's mortgage at that time.  Desirous of refinancing that mortgage, Plaintiff requested, and Defendant issued, a Payoff Statement on July 31, 2006.

>      The Payoff Statement provided several pieces of financial information.  It stated that "PAYOFF GOOD THROUGH SEPTEMBER 1, 2006."  The "TOTAL TO PAY LOAN IN FULL" was $133,531.25.  In reaching that figure, the Payoff Statement itemized each charge as follows:

> | | |
> |---|---|
> | PRINCIPAL BALANCE AS OF 07/01/06 | $132,028.11 |
> | INTEREST FROM 07/01/06 TO 09/01/06 AT 6.250% | $1,421.14 |
> | RECORDING FEE | $32.00 |
> | TOTAL SECURED BY MORTGAGE | $133,481.25 |
> | FAX/ STATEMENT FEE | $50.00 |

> It also listed a per diem interest payment of $22.9216.

>      Additionally, the Payoff Statement included several directions to the user.  First, it provided the following notice, "IMPORTANT:  PLEASE REFER TO THE REVERSE SIDE OF THIS STATEMENT FOR IMPORTANT INFORMATION.  THIS PAYOFF AMOUNT IS GOOD THROUGH THE DATE SHOWN ABOVE AND MAY CHANGE DUE TO ANY ACCOUNT ACTIVITY.  PLEASE CALL 1–800–283–7918 TO CONFIRM THE AMOUNT PRIOR TO SENDING PAYOFF."  The reverse side of the Payoff Statement then includes several statements.  It states that "[i]nterest will continue to accrue until the date [Citi] receives your payoff funds."  It also provides, "The payoff statement is calculated to the Next Interest Due Date to avoid any interest shortfall."  Finally, it states that a

No. 11-3431
*Williams v. CitiMortgage, Inc.*

> "refund will be sent to the customer's address, within 30 calendar days after payoff, for any remaining escrow funds and/or additional payoff amount."
>
> Plaintiff's refinancing transaction closed on July 31, 2006. Defendant received a disbursement from that closing on August 7, 2006 in the amount of $133,531.25. Approximately 30 days later, Defendant mailed Plaintiff a check labeled "refund of escrow" that included the excess escrow money ($1,087.44) as well as the amount of interest Plaintiff overpaid in the disbursement (about $600).
>
> [] In her Complaint, Plaintiff asserts six counts against Defendant primarily based on the allegations that Defendant had a "practice of overstating the amount due on its payoff statements" and, as a result, Plaintiff "conferred a benefit upon [Defendant] by paying interest and fees in excess of the amounts owed." The six counts are: unjust enrichment (Count I), breach of contract (Count II), breach of contract under a third party beneficiary theory (Count III), fraud (Count IV), violations of the Ohio consumer protection statutes (Count V), and violations of the Truth In Lending Act (Count VI).

*Williams v. CitiMortgage, Inc.*, No. 2:08-CV-368, 2011 WL 1303257, at *1-2 (S.D. Ohio Mar. 31, 2011) (unpublished) (citations to the record omitted).

**II**

CitiMortgage filed a motion to dismiss under Fed. R. Civ. P. 12(b)(6), arguing that explicit disclosures in its July 31, 2006 mortgage-loan Payoff Statement (which Williams appended to her complaint) contradicted the entire predicate of Williams's claims – that CitiMortgage misrepresented the payoff amount and induced or misled her to pay more than the amount due. The district court dismissed Williams's claims with prejudice, and denied leave to amend.

This court reviews de novo the grant of a Rule 12(b)(6) motion. *Savoie v. Martin*, 673 F.3d 488, 492 (6th Cir. 2012). In ruling on a Rule 12(b)(6) motion, a court "may consider the Complaint and any exhibits attached thereto, public records, items appearing in the record of the case and exhibits attached to defendant's motion to dismiss so long as they are referred to in the Complaint

3

and are central to the claims contained therein." *Bassett v. Nat'l Collegiate Athletic Ass'n*, 528 F.3d

426, 430 (6th Cir. 2008) (citing *Amini v. Oberlin Coll.*, 259 F.3d 493, 502 (6th Cir. 2001)).

**A**

Williams argues that the district court erred in finding that the language of the Payoff

Statement 1) was not fraudulent or misleading as a matter of law, and 2) squarely contradicted her

claims that CitiMortgage required her to pay excessive interest and improperly required her to pay

a $50 fax/statement fee in order to pay off her loan. She also asserts that the district court's reliance

on *Larson v. CitiMortgage, Inc.*, No. 08 C 5178, 2009 WL 528690 (N.D. Ill. Feb. 25, 2009)

(unpublished), was erroneous because 1) *Larson*'s holding is limited to FHA loans rather than

conventional loans such as at issue here, and 2) applicable precedent holds that the determination

whether representations are misleading or fraudulent is generally a question of fact.

**B**

To state a claim for common-law fraud under Ohio law, a plaintiff must allege:

> (1) a representation or, where there is a duty to disclose, concealment of a fact, (2)
> which is material to the transaction at hand, (3) made falsely, with knowledge of its
> falsity, or with such utter disregard and recklessness as to whether it is true or false
> that knowledge may be inferred, (4) with the intent of misleading another into relying
> upon it, (5) justifiable reliance upon the representation or concealment, and (6) a
> resulting injury proximately caused by the reliance.

*CitiMortgage, Inc. v. Hoge*, 962 N.E.2d 327, 333 (Ohio Ct. App. 2011) (internal quotation marks

and citation omitted).

**C**

The district court's opinion states in pertinent part:

[] Defendant relies on *Larson v. CitiMortgage, Inc.*, a case factually similar to the case sub judice, in which the court granted the defendant's motion to dismiss all of plaintiffs' claims with prejudice because the clear and unambiguous text of the payment statement contradicted the factual predicate of the plaintiffs' claims. Case No. 08 C 5178, 2009 WL 528690 (N.D. Ill. Feb. 25, 2009) (Leinenweber, J.). In *Larson*, the plaintiffs Eric and Codi Larson owned a condominium with a mortgage held by the defendant CitiMortgage, Inc. and insured by the Fair Housing Administration. CitiMortgage provided Larson a payoff statement in connection with the mortgage. The payoff statement stated that it was good through July 1, 2008, and listed the "total to pay loan in full" as $96,160.02. It also included an itemized accounting of that figure including, (1) the principal balance as of May 1, 2008, in the amount of $95,161.20; (2) interest from May 1, 2008 to July 1, 2008 at 5.500%, in the amount of $872.32; (3) an FHA premium, in the amount of $121.50; and (4) a fax/statement fee, in the amount of $5.00. The reverse side of the payoff statement included, inter alia, instructions regarding the calculation of interest, a telephone number to contact the defendant for an update of the payoff amount, specific instructions the payoff of FHA or non-FHA loans, and a statement that any overpayment would be refunded within thirty days of the payoff. On May 29, 2008, the Larsons sold the condominium unit and closed their loan. The day after the closing, May 30, 2008, CitiMortgage received from the Larsons $96,160.02, the amount listed in the Payoff Statement calculated through July 1, 2008.

The Larsons then filed a class action law suit alleging CitiMortgage charged excessive interest on FHA-insured and other mortgage loans, in violation of federal and state law. Plaintiffs brought claims on behalf of two classes of borrowers who contracted with CitiMortgage: (1) all FHA loan borrowers; and (2) all mortgage loan borrowers. The Larsons claimed that by providing a Payoff Statement with a payoff amount "good through" July 1, 2008, CitiMortgage required them to pay excess interest when they closed on the sale of their property. Although CitiMortgage ultimately returned the extra money, the Larsons claimed Citimortgage gained the benefit of having the borrower's money for an extra month. The Larsons claimed that those practices breached CitiMortgage's contracts with borrowers (the mortgage and/or note) and violated multiple statutes. They asserted federal and state law claims including breaches of contract and third-party beneficiary contract, consumer fraud, restitution, and violations of the Illinois Interest Act.

The court in *Larson* considered the payoff statement attached to the complaint when ruling on the motion to dismiss, and held that:

> The Payoff Statement on its face clearly contradicts Plaintiffs' claims
> that Defendant required them to pay excessive interest in order to pay

their mortgage in full. The Payoff Statement was not a demand for payment for a specific amount due as of a chosen closing date, but instead was a quote for a payoff that was "good through" July 1, 2008. In the Payoff Statement, Defendant disclosed that $96,160.02 was the amount to pay of the loan in full "good through" July 1, 2008. The Payoff Statement did not list a specific payoff amount due on Plaintiffs' chosen closing date or any other date, however, it clearly disclosed the manner in which interest was to be calculated and paid in connection with the payoff of the loan.

The court went on to find that based on the face of the complaint and the unambiguous text of the payoff statement, the plaintiffs failed to sufficiently allege that CitiMortgage "required them or any other borrowers to pay excess interest on their mortgages." *Id.* at *4. The court granted the motion to dismiss in its entir[e]ty and dismissed all claims against CitiMortgage with prejudice.

Although the Court recognizes *Larson* is not binding precedent, the Court finds it persuasive. *See Fitzgerald v. Mallinckrodt, Inc.*, 681 F. Supp. 404, 407 (E.D. Mich. 1987) (decision from a different circuit while not binding may be persuasive) (citations omitted). Notably, in its response to this authority, Plaintiff does not offer any case with similar facts for the Court to compare. The Court can find no such contrary authority, or any authority for that matter with similar facts or allegations that offers any merit to the claims advanced by Plaintiff.

The law is clear that the Court may consider the Payoff Statement, which was attached to the Complaint as Exhibit A, in determining whether dismissal is proper. "[W]hen a written instrument contradicts allegations in the complaint to which it is attached, the exhibit trumps the allegations." *N. Indiana Gun & Outdoor Shows, Inc. v. City of S. Bend*, 163 F.3d 449, 454 (7th Cir. 1998). *See, generally, In re Nat'l Century Fin. Enter., Inc., Inv. Litig.*, 604 F. Supp. 2d 1128, 1157 (S.D. Ohio 2009) (citing *Fayetteville Investors v. Commercial Builders, Inc.*, 936 F.2d 1462, 1465 (4th Cir. 1991) ( "[I]n the event of conflict between the bare allegations of the complaint and any [attached] exhibit ... the exhibit prevails.")); *In re Livent, Inc. Noteholders Secs. Litig.*, 151 F. Supp. 2d 371, 405–06 (S.D.N.Y. 2001) ("[A] court need not feel constrained to accept as truth conflicting pleadings that make no sense, or that would render a claim incoherent, or that are contradicted either by statements in the complaint itself or by documents upon which its pleadings rely, or by facts of which the court may take judicial notice."). "Indeed, if a factual assertion in the pleadings is inconsistent with a document attached for support, the Court is to accept the facts as stated in the attached document," *see Nat'l Assoc. of Minority Contractors, Dayton Chapter v. Martinez*, 248 F. Supp. 2d 679, 681 (S.D. Ohio 2002), and is "not

bound to accept as true a legal conclusion couched as a factual allegation." *Twombly*, 550 U.S. at 555. . . .

The facts in *Larson* are nearly identical to the facts in this case and the Payoff Statements are virtually identical in their language. Plaintiff suggests that the *Larson* case is distinguishable because the plaintiff paid off an FHA-loan, rather than a conventional loan like she had. She states that FHA-loans are governed by a distinct regulatory scheme and that an FHA-loan's interest is not calculated on per diem basis. Notably, however, both the payoff statement in *Larson* and the payoff statement in this case include language regarding the payoff of conventional loans and FHA-loans. The Court fails to see how the distinction between an FHA or a conventional loan is a distinction with merit.

As in *Larson*, the Payoff Statement in this case on its face squarely contradicts Plaintiff's claims that Defendant required her to pay excessive interest in order to pay her mortgage in full. The Payoff Statement was not a demand for payment at all, nor a demand for a specific payment due on a specific date. Instead it was a quote for a payoff amount that was good through September 1, 2006. The Payoff Statement states the per diem interest rate of 6.250% and the per day interest charge of $22.9216. It also disclosed the manner in which interest was to be calculated and paid in connection with the payoff of the loan, and informed Plaintiff that interest would accrue until the date Defendant received her payoff funds. In case of overpayment, the Payoff Statement also stated that a refund would be sent within thirty calendar days after the payoff with any remaining escrow funds.

In addition, as in *Larson*, the Payoff Statement stated that the "payoff amount is good through [September 1, 2006] ... and may change due to account activity" and suggested that borrowers call a toll-free telephone number to "confirm the amount prior to sending payoff." Plaintiff does not allege that she called this number to determine the exact amount of money due pursuant to the terms of the mortgage on her chosen closing date.

*Williams*, 2011 WL 1303257, at *3-5 (citations to the record omitted).

**1**

Williams contends that any reasonable consumer reviewing the Payoff Statement would interpret it as *requiring* payment of all sums listed in its most conspicuous portion – the box entitled "Payoff Amount Calculations." Williams maintains that the Payoff Statement is "demonstrably

false" in that it "affirmatively represents that the interest is due through September 1, 2006 and –

significantly – that this interest is part of the "TOTAL SECURED BY [THE] MORTGAGE." She

asserts that the Payoff Statement unambiguously represented that she was to pay all of these sums,

including the additional impermissible unaccrued interest in order to pay her loan in full. Pl.'s Br.

at 27-30. Williams maintains that the disclosures on the back of the Payoff Statement "do not

mitigate the misrepresentations made on the front . . . on which borrowers would naturally rely."

*Id.* at 32. She also argues that "[n]otably absent from CitiMortgage's arguments below and the

district court's Opinion . . . is an explanation as to why, if CitiMortgage did not seek to induce

borrowers to pay the unaccrued interest and the improper fees, it did not notify borrowers in clear

language that they need not do so. It could have simply presented the amount of principal due and

the *per diem* amount and instructed borrowers to calculate the amount of additional interest that

would accrue as of the date of their payoff." *Id.* at 33.

Williams's arguments sidestep the fact that the front of the Payoff Statement conspicuously

states "Statement Date July 31, 2006," and "Payoff Good Through September 1, 2006." The front

of the Payoff Statement repeats that "This payoff is good through the date shown," i.e., September

1, 2006, and states "Please call 1-800-283-7918 to confirm the amount prior to sending payoff." The

front of the Payoff Statement also states: "Please refer to the reverse side of this statement for

important information." The reverse side of the Payoff Statement provides, in a section entitled

"Important Information," that "The payoff statement is calculated to the *Next Interest Due Date* to

avoid any interest shortfall." The "Important Information" section also states: "The final payoff will

be calculated on a per diem basis. Any additional payoff amount will be refunded after the payoff

8

is processed," and "A refund will be sent to the customer's address, within 30 calendars after payoff, for any remaining escrow funds and/or any additional payoff amount."

Given these express disclosures, we uphold the district court's determination that the Payoff Statement squarely contradicted Williams's claims that CitiMortgage fraudulently induced or required her to pay excessive interest.

**2**

Williams's argument that CitiMortgage improperly charged a $50 fax/statement fee for releasing the mortgage is also contradicted by disclosures in the July 31, 2006 Payoff Statement. The district court did not expressly address the $50 fax/statement fee, but did so impliedly when it stated: "Plaintiff's claims are undermined by . . . the plain language of the Payoff Statement attached to the Complaint," and concluded: "the Complaint and the unambiguous text of the attached Payoff Statement demonstrate that the Complaint is insufficiently pleaded to allege that Defendant compelled Plaintiff to pay excess interest on her mortgage *or made any misrepresentations as to the payoff amount of her mortgage*." *Williams*, 2011 WL 1303257, at *3, 5 (emphasis added).

The $50 fax/statement fee is one of the figures listed on the front of the Payoff Statement. The $50 fee is not included in the $133,481.25 "Total Secured by Mortgage" figure, but rather, is included in the $133,531.25 "Total To Pay Loan In Full" on the front of the Payoff Statement. The reverse side of the Payoff Statement states under "Important Information":

> Servicing fees are fees incurred by the mortgagor for services received, including but not limited to: document copies, name change documents, verifications of mortgage, *and fees associated with faxing these documents*.

That is, the Payoff Statement makes clear that the $50 fax/statement fee is not secured by the mortgage and represents an independent charge imposed by CitiMortgage for its services. Williams's argument that CitiMortgage fraudulently induced or misled her into paying this fee in order to pay off her loan is thus contradicted by the Payoff Statement.

The district court also did not expressly address Williams's allegation that no language in her mortgage note permitted CitiMortgage to require her to pay the $50 fax fee in order to pay off her mortgage loan. However, as discussed above, the Payoff Statement indicated that the fax fee was not required as a condition for releasing the mortgage. In any event, neither the note nor the mortgage precludes the fax statement fee. Paragraph 5 of the note, entitled "Loan Charges," contemplates that charges will be collected in connection with the loan, and paragraph 14 of the mortgage contemplates loan charges, which it limits in two ways, neither of which is applicable here (fees expressly prohibited by the Security Instrument or applicable law, and lender may charge fee for releasing security instrument only if fee is paid to a third party and permitted by law).

**3**

Williams also argues that the district court's sole reliance on *Larson* was erroneous and that applicable precedents hold that the determination whether representations are misleading or fraudulent is generally a question of fact and not properly resolved on a motion to dismiss.

Under the circumstance that Williams cited no authority with similar facts and the district court's search yielded none, the district court properly looked to *Larson*, which involved a nearly identical payoff statement and facts, and the same basic challenge Williams presents – that CitiMortgage's payoff statements required borrowers to pay excess interest, and that although

10

CitiMortgage ultimately returned the extra funds, it gained the benefit of having the borrower's money for a month.

Williams maintains that *Larson* is distinguishable and inapposite because it involved FHA loans, and FHA lenders are entitled to collect interest through the entire month on an FHA insured loan, whereas interest on Williams's loan accrued only as time passes. We disagree.

The *Larson* plaintiffs brought claims on behalf of two classes of borrowers who contracted with CitiMortgage – FHA loan borrowers and all mortgage loan borrowers. 2009 WL 528690, at *2. Their complaint alleged that CitiMortgage's policy and practice is to charge interest on FHA *and other loans* until the first day of the month following the receipt of prepayment. In any event, that the Larsons' loan was FHA-insured as opposed to a conventional loan is immaterial because the *Larson* plaintiffs, like Williams, initially overpaid interest and made the same argument Williams makes here – that CitiMortgage's payoff statement failed to disclose that the payoff amount due on the date that the borrower actually pays off the loan is less than the amount due on the "good through" date set forth in the payoff statement. *Id.* at *2-3.

Williams is correct that the question whether particular statements are fraudulent or misleading is generally one of fact. *Carpenter v. Scherer-Mountain Ins. Agency*, 733 N.E.2d 1196, 1204-05 (Ohio Ct. App. 1999) (reversing grant of summary judgment of intentional misrepresentation claim, observing that "[t]he existence of fraud is generally a question of fact"); *Kungle v. Equitable Gen. Ins. Co.*, 500 N.E.2d 343, 347 (Ohio Ct. App. 1985) (affirming trial court's holding after bench trial that fraud claim against insurance agent failed where agent made no representations on which plaintiff could rely, observing that the existence of fraud is an issue of fact).

11

However, the district court was not obliged to accept as true the allegations in Williams's complaint in the face of the clear language in the Payoff Statement, and could properly conclude that CitiMortgage's Payoff Statement was not fraudulent or misleading as a matter of law. *See, e.g., Micrel, Inc. v. TRW, Inc.*, 486 F.3d 866, 874 (6th Cir. 2007) (applying Ohio law, upholding grant of summary judgment of fraud claim on ground that challenged representations were not fraudulent as a matter of law); *Lynch v. Dial Fin. Co. of Ohio No. 1, Inc.*, 656 N.E.2d 714, 720 (Ohio Ct. App. 1995) (rejecting plaintiffs' argument that they presented a common-law fraud claim and affirming summary judgment on basis that fraud allegations were groundless as a matter of law where there was no misrepresentation or concealment of material fact nor reliance thereon). That the district court did not expressly address Williams's argument that a jury should decide whether the Payoff Statement was fraudulent or misleading is of no consequence given that the clear language of the Payoff Statement forecloses Williams's fraud claim.

For the reasons stated, we AFFIRM.